IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMON DIEHL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-1591 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| SERGEANT LEACH, C/O BOWEN, | ) | |
| C/O VALENCIA, and | ) | |
| C/O HECHAVARRIA, | ) | Re: ECF No. 45 |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Presently before this Court is the Motion to Dismiss filed by Defendants Sergeant Leach, C/O Bowen, C/O Valencia and C/O Hechavarria. ECF No. 45. For the following reasons, the Motion to Dismiss is denied.

### I. FACTUAL BACKGROUND

On April 15, 2015, Plaintiff Jamon Diehl ("Plaintiff") was an inmate incarcerated at the State Correctional Institution at Greene ("SCI-Greene"). On that date, Defendants Leach, Valencia and Hechavarria, before transporting Plaintiff to the exercise yard, placed his arms behind his back and handcuffed him. The handcuffs were attached to a tether that the corrections officers held to control Plaintiff's movement. Id. ¶ 10. Leach led the way, unlocking the gates, Valencia and Hechavarria escorted Plaintiff on both sides of his body. Id. ¶ 11.

1

During transport, Plaintiff was being led past Christopher Gerlach ("Gerlach"), a custody Level 5 inmate, who was located in an enclosed pen. Unbeknownst to Plaintiff, Gerlach was lying in wait for Plaintiff's escorted route to cross paths with him. Id. ¶¶ 12, 13.

Prior to being place in the enclosed pen, Gerlach made a mixture of semen, blood, urine and fecal matter (the "mixture") and placed it in a 13.5 ounce bottle. Gerlach had previously notified Defendant Bowen that Gerlach was going to "shit down" another inmate, meaning the mixture was going to be used on someone. Id. ¶ 14. According to DOC Regulation DC-ADM 203, Section 2, Gerlach should have been strip searched when he was admitted/discharged from the Security Level 5 Housing Unit and because there was reason to believe that he was in possession of contraband. Id. ¶ 15. On the morning in question, Gerlach was not strip searched and was able to bring the bottle containing the mixture into the enclosed pen. Id. ¶ 16.

At approximately 7:50 a.m., Leach, Valencia and Hechavarria led Plaintiff down the path with exercise pens on both sides. Id. ¶ 17. From his enclosed pen, Gerlach carried out the planned attack and squirted the mixture on Plaintiff. The mixture immediately landed in Plaintiff's eyes. Id. ¶ 18. Some of the mixture landed in Plaintiff's mouth, causing him to involuntarily ingest the mixture. Id. ¶ 19. Leach, Valencia and Hechavarria immediately ran off, leaving Plaintiff behind, defenseless and handcuffed with his arms behind his back. Id. ¶ 20. Unaccompanied by corrections officers, Plaintiff was forced to maintain his position or face discipline for attempting to flee. He was on the ground defenseless as the attack continued. Id. ¶ 21. As Gerlach squirted the mixture on Plaintiff, Gerlach screamed, "You are going to die. I got AIDS." By the end of the attack, Plaintiff was covered in the mixture. Id. ¶ 22.

Only after the bottle was completely emptied did Leach, Valencia and Hechavarria return to the scene and escort Plaintiff back to his cell. Id. ¶ 23. Still covered in the mixture, Plaintiff repeatedly asked Leach and the other corrections officers for a shower but his requests were denied. Id. ¶¶ 24, 27. After the mixture began causing a burning sensation in his eyes, Plaintiff was seen by medical staff who cleaned out his eyes. He was still not permitted to shower. Id. ¶ 26. Not until Plaintiff put his arms out of his cell in protest and refuse to move them did SCI-Greene officials finally allow him to shower to remove the mixture. Id. ¶ 28.

As a result of the attack, Plaintiff suffered a burning sensation in his eyes, an eye infection, an ear infection, humiliation, depression and suicidal thoughts. Id. ¶ 29.

Following the attack, Plaintiff filed grievances in accordance with SCI-Greene procedures. In retaliation for the filing of these grievances, SCI-Greene corrections officers falsely informed other inmates that Plaintiff was a "rat" and/or a "snitch." Id. ¶ 31. As result, Plaintiff was subjected to a series of retaliatory actions by other inmates. Id. ¶¶ 32-33.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action by submitting a pro se Complaint that was docketed on January 30, 2017. ECF No. 6. The Court granted a Motion to Appoint Counsel and counsel entered their appearance on August 30, 2017. ECF Nos. 36, 42 and 43. Thereafter, an Amended Complaint was filed that streamlined and clarified Plaintiff's claims. ECF No. 44. Defendants filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted and Brief in Support. ECF Nos. 45, 46. Plaintiff filed a Response in Opposition. ECF No. 51. As such, the Motion to Dismiss is now ripe for consideration.

3

III.  **STANDARD OF REVIEW**

As the United States Supreme Court explained in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In assessing the merits of a claim subject to a motion to dismiss, a court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003)). A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)).

The scope of review may extend to "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

IV.  **DISCUSSION**

Plaintiff asserts three claims in the Amended Complaint for deprivation of his Eighth Amendment right to be free of cruel and unusual punishment: Count I - conditions of confinement; Count II - failure to intervene, and Count III - failure to protect. ECF No. 44.

Although Defendants state that they are moving to dismiss the Amended Complaint in its entirety, a careful review of the Motion to Dismiss and Brief in Support reveals that, as Plaintiff

correctly points out, Defendants do not seek dismissal of Count I as to conditions of confinement; only seek partial dismissal of Count II for failure to intervene as to Defendant Bowen, and seek the dismissal of the entirety of Count III for failure to protect. ECF Nos. 45, 46 and 51.

### A. Count II – Failure to Intervene (as to Defendant Bowen)

In Count II of the Amended Complaint, Plaintiff alleges a failure to intervene claim against all of the Defendants. ECF No. 44 at ¶¶ 42-50. Defendants move to dismiss Count II as to Defendant Bowen, arguing that Bowen was not present when Gerlach sprayed Plaintiff with the mixture, nor did Bowen have knowledge that Gerlach would attack Plaintiff. ECF No. 46 at 5.

In order to state a claim under the Eighth Amendment for failure to intervene, "a plaintiff must establish that (1) the corrections officers failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge and (2) there was a realistic and reasonable opportunity to intervene." Brown v. Burnett, Civ. A. No. 15-284, 2016 WL 74652, at *6 (W.D. Pa. Jan. 7, 2016).

In opposing the Motion to Dismiss, Plaintiff argues that under the first prong of the above-noted test that Plaintiff must establish that Defendant Bowen refused to intervene during an attack that either occurred in his presence or with his knowledge. In the Amended Complaint, Plaintiff specifically alleges that Bowen knew that Gerlach planned to "shit down" another inmate. Plaintiff also claims that Bowen was the corrections officer in charge or at least in a position to strip search Gerlach and yet he was not strip searched. ECF No. 44 at ¶¶ 14-15. As a result of Bowen's knowledge that Gerlach was going to attack another inmate and Bowen's failure to take any action, the first prong at this initial pleading stage is satisfied.

5

As to the second prong, it is sufficiently alleged at this stage of the case that: Bowen had knowledge of Gerlach's planned attack, could have communicated this knowledge to other corrections officers or management at SCI-Greene, and should have conducted the requisite strip search or could have made sure that other corrections officers conducted the requisite strip search, and should have acted upon his reasonable opportunity to intervene.

Because the averments of the Amended Complaint sufficiently state a claim for failure to intervene as to Defendant Bowen, the Motion to Dismiss Count II as to Bowen is denied.

**B.     Count III - Failure to Protect (as to all Defendants)**

Defendants move to dismiss Count III of the Amended Complaint arguing that Plaintiff failed to state a failure to protect claim. ECF No. 46 at 3-5. Specifically, Defendants argue that Plaintiff's claim fails because he has not alleged that Defendants had the requisite knowledge that Gerlach was going to attack Plaintiff, in particular. Id. at 4-5.

The Eighth Amendment requires a prison official to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). While a prison official has a duty to protect prisoners from attacks by other prisoners, not every injury suffered by a prisoner at the hands of another translates to constitutional liability for the official responsible for the prisoner's safety. Id. at 833-34. An inmate making a failure to protect claim has the burden of proof to establish that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has further held that the knowledge requirement is subjective, "meaning that the official must actually be

aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Id.; see Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). Actual knowledge can be proven circumstantially where the general danger was obvious. Farmer, 511 U.S. at 842.

Based on our review, the Court finds that Plaintiff has stated a plausible failure to protect claim. Plaintiff has alleged that Defendant Bowen knew that Gerlach was going to attack or "shit down" another inmate with the "mixture." ECF No. 44 ¶ 14. Despite this knowledge of the significant threat to inmate safety and health, Defendant Bowen did nothing. As such, every prisoner from the unit at issue who was escorted past Gerlach was at risk of the planned attack. Further, Plaintiff also alleges that all of the Defendants had "actual knowledge" of Gerlach's threat to "shit down" another inmate and did nothing. ECF No. 44 ¶ 54. Clearly, the extent of each defendant's knowledge of the threat and their failure to undertake appropriate action to protect against the threat can be explored during discovery. Based on these averments, as well as others in the Complaint, Plaintiff has sufficiently asserted a failure to protect claim. The Motion to Dismiss Count III is denied.

### C. Adherence to DOC Policies

In the Motion to Dismiss, Defendants assert that Plaintiff has failed to state on claim based on their failure to adhere to DOC policies. ECF No. 45 ¶ 5, 46 at 6. However, as Plaintiff correctly points out in his Brief in Opposition, nowhere in the Amended Complaint does Plaintiff allege such a cause of action. ECF No. 51 at 6-7. Plaintiff does allege that Defendants failed strip search Gerlach before escorting him to the enclosed exercise pen, but, this allegation is part of the three clearly articulated causes of action. As such, the Motion to Dismiss on this ground is not appropriate and is denied.

7

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss, ECF No. 45, will be denied. An appropriate Order follows.

## ORDER

AND NOW, this 15th day of February, 2018, IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendants, ECF No. 45, is denied.

BY THE COURT:

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM-ECF